UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JOANN HEDGEMON** | * | **CIVIL ACTION NO. 14-0817** |
| **VERSUS** | * | **MAG. JUDGE KAREN L. HAYES** |
| **MADISON PARISH SCHOOL BOARD** | * | |

## MEMORANDUM RULING

Before the court is a motion for summary judgment [doc. # 13] filed by defendant Madison Parish School Board (hereinafter, "MPSB"). With the consent of all parties, the District Court referred the above-captioned case to the undersigned magistrate judge for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c). For reasons assigned below, the motion for summary judgment is GRANTED, and plaintiff's claims are DISMISSED, with prejudice.

### Procedural History

On April 16, 2014, JoAnn Hedgemon filed the instant complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., against her former employer, the MPSB. Hedgemon alleges that the MPSB unlawfully discriminated against her on the basis of age when it discharged her from her position as an educational diagnostician in November 2013. She seeks damages for lost income, mental distress, embarrassment, humiliation, inconvenience, consequential damages, physical and mental pain and suffering, loss of occupational opportunities, loss of enjoyment of life, punitive damages, reasonable attorney's fees, interest, injunctive relief, and court costs.

On March 30, 2015, the MPSB filed the instant motion for summary judgment seeking dismissal of plaintiff's claims in their entirety, at her cost. Plaintiff filed her opposition on April 22, 2015. [doc. # 16]. Movant filed its reply memorandum on May 1, 2015. [doc. # 20]. Thereafter, the court re-opened discovery for an additional 30 days to afford plaintiff an opportunity to conduct discovery regarding facts and evidence adduced by defendant in its reply brief. *See* doc. #s 18-20. On June 10, plaintiff's counsel confirmed that the motion for summary judgment is ripe. (June 10, 2015, Order [doc. # 21]).

## Summary Judgment Standard

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Finally, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In other words, summary judgment is warranted if no reasonable juror could return a verdict in favor of the non-movant. *See Anderson*, 477 U.S. at 252 (citation omitted).

### Pertinent Facts

1.  JoAnn Hedgemon received a Masters Degree in Education and began her career in education in 1960. She worked in various capacities over the years, including as an educational diagnostician for 15 years prior to her June 2007 retirement from the MPSB. (Hedgemon Affidavit; Pl. Opp.).

2. In 2008, Hedgemon accepted the MPSB's offer to return to work in her former capacity as an educational diagnostician. *Id*. She also was a member of the MPSB's Pupil Appraisal Team. (Hedgemon Affidavit; Opp. Memo., Exh.).

3. According to MPSB records, the MPSB hired Ferdess Smith in August 2009 as an additional educational diagnostician on the Pupil Appraisal Team. (Aug. 6, 2009, MPSB Minutes; Def. Reply Memo., Exh. C).[1]

4. According to Hedgemon, Superintendent Lisa Wilmore asked her to serve on the interview team to hire a second educational diagnostician. (Hedgemon Affidavit).[2] Hedgemon learned that Ferdess Smith worked with Superintendent Lisa Wilmore in her prior position with the Monroe City School System and that Ms. Smith had no *experience* as an educational diagnostician. (Hedgemon Affidavit). However, Smith had a Masters in Education and was certified as an educational diagnostician. (Ferdess Smith Teaching Certificate; Def. Reply Memo., Exh. D). During Smith's hiring process, there was no discussion of her salary being paid out of any particular source of funds. (Hedgemon Affidavit).

5. The MPSB hired Lisa Wilmore as superintendent at its August 22, 2011, meeting. (Aug. 22, 2011, Minutes, MPSB; Lisa Wilmore Affidavit; Def. Reply Memo., Exhs. B & E).

6. According to Hedgemon, she was a member of the MPSB leadership when Lisa Wilmore was hired as superintendent. (Hedgemon Affidavit). At the first leadership team meeting following her hire, Wilmore recited the marriage adage, "something old, something new" and pointed to Hedgemon for the "something old" and then to a younger member of the team for "something new." *Id*. Hedgemon felt humiliated. *Id*.[3]

7. At an unspecified staff meeting, Hedgemon stated that Wilmore inquired in her presence, "why do we have all these retired people working for the school board"? (Hedgemon

---

[1] A properly constituted student appraisal team is supposed to include, *inter alia*, a qualified school social worker. (Hedgemon Affidavit). The MPSB, however, was unable to hire a qualified social worker; thus, it decided to hire a second educational diagnostician. *Id*. Hedgemon attributes Ms. Smith's hire to MPSB Superintendent, Lisa Wilmore. *Id*. However, Wilmore did not become superintendent until 2011. *See* discussion, *infra*.

[2] Again, however, Wilmore was not hired as superintendent until 2011. *See* discussion, *infra*.

[3] Wilmore denies making this comment. (Wilmore Affidavit). She also denies that Hedgemon was on the leadership team during her tenure. *Id*. Furthermore, Hedgemon's signature is not listed on the leadership team meeting sign-in sheets for January 9, 2012, June 11, 2013, August 2, 2013, August 19, 2013, September 11, 2013, and September 2013. *See* Sign-in Sheets; Wilmore Affidavit, Attachs.

Affidavit).[4]

8. During the 2013-2014 school year, the MPSB suffered a significant decline in its general fund balance because of increases in healthcare and retirement expenses, the reduction of grant funding, and the loss of approximately 300 students to a newly formed charter school. (Affidavit of Erica Crenshaw, CEO of Execute Now!; MSJ, Exh. A).[5] Consequently, Execute Now! recommended the elimination of various MPSB positions in an effort to save the MPSB approximately $2.3 million. *Id*. Eliminating positions funded by the District's general fund had a more positive impact on the MPSB's financial condition and budget than eliminating the same positions paid with federal funds. *Id*.

9. At its November 4, 2013, meeting, the MPSB revised its Personnel Reduction Policy to read, in pertinent part:

TEACHERS AND ADMINISTRATORS

Reduction of teachers and administrators shall be based solely upon demand, performance, and effectiveness, as determined by the performance evaluation program adopted by the Board in accordance with La. Rev. Stat. Ann. §§ 17:3881 through 3905. Any reduction of teachers and administrators by the Superintendent shall be instituted by dismissing the least effective teacher within each targeted subject area or area of certification first, and then proceeding by effectiveness rating until the reduction of personnel has been accomplished.

ALL OTHER EMPLOYEES

Reduction of school employees, including bus drivers, who are not evaluated pursuant to La. Rev. Stat. Ann. §§ 17:3881 through 3905, shall be based upon the following criteria:
1. Performance and effectiveness as determined by the Board's personnel evaluation plan.
2. Certification or academic preparation, if applicable. As used herein, "Certification" shall mean that certificate, license or other determination of qualification needed for one to fulfill all duties and functions of the position.
3. When the above criteria do not allow for a reduction or sufficient reduction or in cases of tie, seniority may be utilized.

OTHER PROVISIONS

---

[4] Wilmore denies making this or any other statement directly or indirectly related to Hedgemon's age. (Wilmore Affidavit; Def. Reply Memo., Exh. E).

[5] Execute Now! performed chief financial officer functions for the MPSB.

5

      The superintendent shall be authorized to deviate from the above-described criteria when, in the superintendent's opinion, such a deviation is required in order to meet the particular educational needs of a particular student, program, or certification requirement.
(Nov. 4, 2013, Minutes, MPSB; Lisa Wilmore Affidavit Attach.; MSJ Memo., Exh. B) ("RIF Policy").

10.     At its November 4, 2013, meeting, the MPSB also approved a plan by Superintendent Wilmore to reduce expenses that included a Reduction in Force ("RIF") comprised of some 50 layoffs. (Wilmore Affidavit; MSJ, Exh. B and Attach.).

11.     Approximately 20 of the 50 employees impacted by the RIF were less than 40 years old. (Wilmore Affidavit; MSJ, Exh. B).

12.     On or about November 8, 2013, Hedgemon received a letter from Lisa Wilmore on behalf of the MPSB notifying her that her employment was terminated effective November 22, 2013. (Hedgemon Affidavit). She internally appealed the decision, but to no avail. *Id*.

13.     At the time of discharge, Hedgemon was 75 years old. (Hedgemon Affidavit). Her position was funded from the MPSB's general fund. (Wilmore Affidavit and Affidavit of Vickie Keyes, MPSB Benefits Specialist; MSJ, Exhs. B & C).

14.     The MPSB retained its sole other certified educational diagnostician, Ferdess Smith, who was 53 years old as of November 22, 2013. (Wilmore Affidavit; MSJ, Exh. B). Smith's salary, however, was paid from federal funds. (Wilmore Affidavit and Affidavit of Vickie Keyes, MPSB Benefits Specialist; MSJ, Exhs. B & C).

15.     Wilmore averred that she implemented the RIF in accordance with the MPSB's RIF policy and the authority bestowed upon her. (Wilmore Affidavit; MSJ, Exh. B).

16.     Ultimately, the MPSB eliminated Ms. Hedgemon's position, but retained Ms. Smith, because the former position was funded from the general fund, whereas the latter position was federally funded. (Wilmore Affidavit; MSJ, Exh. B). Hedgemon was not replaced; her job duties were reassigned to existing employees. *Id*.

## Law and Analysis

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the

evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922-23 (5th Cir. 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009)). Toward that end,

> [a] plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof. A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer.

*Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (internal quotation marks and citations omitted).

Hedgemon contends that Superintendent Wilmore's comments regarding the number of retirees working for the school board and about her being "old," constitute both direct *and* circumstantial evidence of discrimination.[6] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *W. v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n3 (5th Cir. 2003) (citation omitted). Where a plaintiff offers remarks as direct evidence, they may constitute sufficient evidence of age discrimination if the comments are "1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440-42 (5th Cir. 2012) (citations and internal quotation marks omitted).

Here, at minimum, the alleged comments do not satisfy the second and fourth requisites

---

[6] Although Wilmore denies making these comments, the court cannot make credibility determinations at the summary judgment, and instead, must make all reasonable inferences in favor of the non-movant. *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 381 (5th Cir. 2010); *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 322-23 (5th Cir. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 1748 (2015).

7

for direct discrimination. According to Hedgemon, Wilmore uttered the "something old" comment at Wilmore's first leadership meeting (Hedgemon Affidavit), which occurred no later than January 9, 2012. *See* Wilmore Affidavit and Attachs.; Reply Memo, Exh. E. Of course, Hedgemon was not discharged until approximately 22 months later – an interval too great for the comment to relate proximally to her discharge. *See Jackson*, 602 F.3d at 381 n.29 (collecting cases). Plaintiff also does not specify when Wilmore purportedly made her additional comment regarding the number of retirees employed by the school board. Thus, there is no evidence that Wilmore made the comment near the time of Hedgemon's discharge. *See Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (plaintiff did not meet his burden to show that the comment was proximally related to the adverse job action when he failed to establish when the comment was made).

Finally, there is no indication that Wilmore's comments related to Hedgemon's discharge. *See Hamilton*, 593 F. App'x at 323 (no evidence that decisionmaker's comment that a work crew was comprised of a single race was related to plaintiff's termination, even though plaintiff belonged to the same race as the work crew); *Jackson, supra* (comment that plaintiff was an "old, gray-haired fart" was not related to plaintiff's subsequent discharge).

Thus, when, as determined here, there is no direct evidence of age discrimination, plaintiff must rely on circumstantial evidence, which the court analyzes under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Jackson*, 602 F.3d at 378. Under this framework,

> [a] plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff

>must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual.

*Moss, supra* (internal citations and quotation marks omitted).

To establish a prima facie case of age discrimination, plaintiff must adduce evidence that "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either I) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of h[er] age." *Jackson, supra* (citation omitted).

In this case, the MPSB does not contest that Hedgemon satisfies the first three elements of her prima facie case. (MSJ Memo., pg. 6). Rather, defendant contends that plaintiff fails to meet the fourth element because no one replaced her, and, in any event, the person who principally assumed her duties, Ms. Smith, was a member of the same protected class (i.e., over 40 years old). Addressing the latter point first, it is clear that an ADEA plaintiff need not show that she was replaced by someone *outside* of the protected class to establish her prima facie case. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 116 S. Ct. 1307 (1996). Instead, district courts within this circuit have "routinely treated the fourth element as satisfied for summary judgment purposes when the age difference between a plaintiff and his replacement is seven years or more." *Ruth v. Eka Chemicals, Inc.*, Civ. Action No. 13-0165, 2015 WL 667662, at *3-4 (N.D. Miss. Feb. 17, 2015) (collecting cases). The age gap between Hedgemon and Smith exceeds that threshold.

On the other hand, the Fifth Circuit has held that an employee "has not been replaced" for purposes of establishing a prima facie case when her duties are assumed by other co-workers.

9

*Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294 (5th Cir. 2014) (citations omitted).[7] Nevertheless, the court finds that plaintiff's allegations of disparate treatment and age-related comments combine to satisfy the fourth element of her prima facie case.

At this point, the pendulum of production swings towards plaintiff's employer to articulate a legitimate non-discriminatory reason for its employment decision. The uncontroverted summary judgment record establishes that the MPSB let Hedgemon go because it needed to trim payroll costs caused by loss of funding. Furthermore, the MPSB retained educational diagnostician, Ferdess Smith, in lieu of JoAnn Hedgemon, because Smith's position was supported by federal funds, whereas Hedgemon was paid out of the MPSB's general fund.

This rationale constitutes a legitimate, non-discriminatory reason sufficient to support the MPSB's decision to eliminate plaintiff's position. *See Cherry v. CCA Properties of Am., Ltd. Liab. Corp.*, 438 F. App'x 348, 352 (5th Cir. 2011) (reduction in force is a legitimate, non-discriminatory reason for termination) (citation omitted); *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 356–57 (5th Cir.2007) (reorganization of department, which resulted in the elimination of plaintiff's position, constitutes a legitimate, non-discriminatory reason for termination). Thus, it devolves upon plaintiff to present a genuine issue of material fact as to whether the MPSB's proffered explanation for her discharge is pretext for unlawful discrimination. *Jackson, supra*.

Plaintiff again relies on Wilmore's alleged comments to show pretext. When remarks are used as circumstantial evidence, "plaintiff need only show (1) discriminatory animus (2) on the

---

[7] The Fifth Circuit endorsed an exception to this rule where the plaintiff's job was the sole position eliminated, as opposed to a mass layoff or reduction-in-force. *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 629 n.2 (5th Cir. 2011) (citation omitted). Those circumstances are absent here.

part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citations omitted). However, remarks may support discriminatory intent only when there is additional evidence of pretext. *Id.*; *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent"). Plaintiff does not meet this further requirement. *See* discussion, *infra*.

      A plaintiff may show pretext "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (citations and internal quotation marks omitted). An explanation is "false or unworthy of credence," in turn, "if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). In addition, pretext may follow from evidence that plaintiff was "clearly better qualified (as opposed to merely better or as qualified) than the employees who are selected . . ." *Moss*, 610 F.3d at 922 (citation and internal quotation marks omitted). Nonetheless, to show that she was "clearly better qualified" than another retained employee, plaintiff must present evidence sufficient for the trier of fact to conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* (citation and internal quotation marks omitted). In addition, "unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." *Id.* (internal quotation marks and citations omitted).

      Hedgemon contends that the MPSB's decision to terminate her, rather than Smith, did not

comport with the RIF Policy: "[a]ny reduction of teachers and administrators by the Superintendent shall be instituted by dismissing the least effective teacher within each targeted subject area or area of certification first, and then proceeding by effectiveness rating until the reduction of personnel has been accomplished." (Nov. 4, 2013, Minutes, MPSB; Lisa Wilmore Affidavit Attach.; MSJ Memo., Exh. B). Plaintiff argues, in effect, that simply by virtue of her greater experience alone, she was more effective and a better performing educational diagnostician than Smith. However, there is no evidence to equate longevity and experience with performance and effectiveness. Indeed, plaintiff did not adduce any performance reviews for herself and Ms. Smith.

Furthermore, the RIF policy authorized the superintendent to deviate from the performance/effectiveness criteria when necessary to "meet the particular educational needs of a particular student, program, or *certification* requirement." The MPSB no longer required two *certified* educational diagnosticians. *See* Wilmore Affidavit, MSJ, Exh. B. Therefore, the MPSB opted to eliminate the position that resulted in the greatest fiscal benefit to the MPSB, which was the position occupied by Ms. Hedgemon.

Even if plaintiff were to show that the MPSB failed to follow its RIF Policy, this is not enough to establish discriminatory intent in the case of a discharged employee. *Hamilton*, 593 F. App'x at 321. Rather, she also must show that she was treated differently from other employees outside of her protected class (or those who were significantly younger than her). *Id*. Here, there is no evidence that the MPSB inconsistently applied its general fund/federal fund dichotomy in other instances depending upon the relative age of the affected jobholders. Moreover, plaintiff has not questioned that Ms. Smith's position was federally funded, or that

12

there was any ulterior motive behind the original decision to fund Ms. Smith's position from federal funds.  Plaintiff did not argue, nor adduce any evidence to establish, that the MPSB simply could have switched the federal source of funding from Ms. Smith to Ms. Hedgemon.

Plaintiff further emphasizes that discriminatory intent may be inferred from the fact that approximately 60 percent of the employees affected by the RIF were over the age of 40.  This bare statistic, however, is not probative of discriminatory intent without additional evidence to demonstrate its relevance, e.g., the ages of the workforce that the affected employees were drawn from.  *See Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006) (citation omitted) (statistics are not probative of discriminatory intent when they are devoid of context).  In any event, statistical evidence cannot be used to establish pretext.  *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1071 (5th Cir. Unit A Jun.1981)).

In sum, plaintiff has failed to identify sufficient evidence to create a genuine dispute of material fact as to whether MPSB's proffered reason for her discharge was pretext for unlawful discrimination.  Therefore, MPSB is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Hamilton, supra*.[8]  It bears repeating that,

> [t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Moss, supra* (citing *Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir.1988)).

## **Conclusion**

---

[8] Under the existing summary judgment record as presented by the parties, no reasonable juror could return a verdict in favor of plaintiff.

For the above-assigned reasons,

IT IS ORDERED that the motion for summary judgment [doc. # 13] filed by defendant Madison Parish School Board is hereby GRANTED. Judgment shall issue dismissing with prejudice plaintiff's claims, in their entirety, at plaintiff's cost.

In Chambers, at Monroe, Louisiana, this 7th day of July, 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE